IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MAR-BOW VALUE PARTNERS, LLC,**

      **Appellant,**

v.

                                               Civil Action No. 3:16cv612
                                                      (*"Mar-Bow I"*)

**MCKINSEY RECOVERY &**
**TRANSFORMATION SERVICES US, LLC**

      **and**

**ALPHA NATURAL RESOURCES, INC.,**

      **Appellees.**

## MEMORANDUM OPINION

      This matter comes before the Court on Appellant Mar-Bow Value Partners, LLC's

("Mar-Bow") appeal from several orders[1] of the United States Bankruptcy Court for the Eastern

District of Virginia (the "Bankruptcy Court"), Appellee McKinsey Recovery & Transformation

Services US, LLC's ("McKinsey") Motion to Dismiss Appeal of Mar-Bow Value Partners, LLC

as Equitably Moot (the "Motion to Dismiss as Equitably Moot"), (ECF No. 32), and McKinsey's

---

[1] The appeals in this case will be referred to as *"Mar-Bow I."* A different case pends in which Mar-Bow has filed an appeal of other rulings of the Bankruptcy Court. *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs.*, (*Mar-Bow II*) No. 3:16cv799. The Memorandum Opinion in *Mar-Bow II* (the *"Mar-Bow II* Memorandum Opinion") addresses Mar-Bow's appeal of the Bankruptcy Court's grant of McKinsey's Third Interim and Final Fee Applications. This Memorandum Opinion addresses Mar-Bow's appeal of the Bankruptcy Court's rulings on Mar-Bow's objections regarding the Reorganization Plan and Mar-Bow's Motion to Compel Compliance with Rule 2014.

    As discussed more fully below, *see infra* note 32, Mar-Bow filed duplicative notices of appeal as to the Fee Application Rulings in this case and in *Mar-Bow II.* The Court addresses Mar-Bow's appeals of the Fee Application Rulings *only* in the *Mar-Bow II* Memorandum Opinion.

    Given Mar-Bow's numerous appeals in both cases and the related nature of the facts underlying the appeals, the Court notes throughout this Memorandum Opinion which rulings it assesses in this appeal, and which rulings it evaluates in the Memorandum Opinion in the *Mar-Bow II* Memorandum Opinion.

Motion to Dismiss Appeal of Mar-Bow Value Partners, LLC for Lack of Standing (the "Motion to Dismiss for Lack of Standing"), (ECF No. 37). Mar-Bow, McKinsey, and Alpha Natural Resources ("ANR") have all filed their respective briefs, (ECF Nos. 24, 35, 38, 47), Mar-Bow has responded to the Motion to Dismiss as Equitably Moot and the Motion to Dismiss for Lack of Standing (ECF Nos. 33, 43), and McKinsey has replied, (ECF Nos. 34, 46). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, the matters are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[2] For the reasons that follow, the Court will grant both motions to dismiss and dismiss Mar-Bow's appeal.

## I. Standard of Review

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526–27 (E.D. Va. 2010) (citing *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The district court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *accord In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008). In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual

---

[2] "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157] . . . ." 28 U.S.C. § 158(a)(1).

portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

## II. Factual Background[3]

Although this appeal arises in the context of a chapter 11 bankruptcy,[4] the dispute before the Court has little to do with the bankruptcy itself. The conflict before the Court is between McKinsey, a professional firm employed by ANR and many of its subsidiaries, the debtors in the underlying bankruptcy action (collectively, the "Debtors"), and Mar-Bow, an unsecured creditor of the Debtors. From the time Mar-Bow first appeared in the bankruptcy action, it objected strenuously and continually to the sufficiency of disclosures that the Bankruptcy Rules require McKinsey, employed to assist with the Debtors' reorganization in this bankruptcy action, to make.[5] Each appeal before the Court attempts to revisit that same issue: whether McKinsey fully complied with Federal Rule of Bankruptcy Procedure 2014.[6]

### A.     The Parties Relevant to the Instant Appeal

The Debtors—Alpha Natural Resources and many of its subsidiaries—are "one of the largest coal suppliers in the United States." (McKinsey Br. 15, ECF No. 38.) The Debtors filed

---

[3] The issues on appeal in this Court have little to do with the facts underlying the bankruptcy case. The Court, therefore, will provide only the factual background necessary to establish context, but will recount the facts relevant to Mar-Bow's appeal in detail. And although the factual background in this case substantially overlaps with the background in *Mar-Bow II*, the Court recounts the relevant factual background in both opinions for clarity's sake.

[4] Chapter 11 permits reorganization of a debtor's business, rather than liquidation of all assets. *See* 11 U.S.C. §§ 1101, *et seq.*

[5] Indeed, the record in the underlying bankruptcy case shows that *all* of Mar-Bow's actions pertained to this one issue: the sufficiency of McKinsey's Rule 2014 disclosures. Even when Mar-Bow succeeded on some motions, it continued challenging what it perceived as a partial denial.

[6] As discussed more fully below, Rule 2014 requires that professionals employed in a bankruptcy action disclose "connections" with, *inter alia*, the debtor, creditor, and any other parties in interest to the bankruptcy. Fed. R. Bankr. P. 2014(a).

3

for chapter 11 protection in August 2015 in part because of an "historic downturn in their industry." (July 7, 2016 Hr'g Tr. 23.)

McKinsey Recovery and Transformation Services ("McKinsey") "is a global, full service restructuring advisory and crisis management firm that . . . support[s] companies through all aspects of recovery and transformation." (First Carmody Decl. 3, App. 31.) Essentially, McKinsey advises struggling businesses on how to improve their profitability, and helps businesses implement the changes it suggests. McKinsey has experience providing chapter 11 advisory services, and in helping struggling businesses increase their profitability.

Mar-Bow, as relevant to the bankruptcy action, is an unsecured creditor of the Debtors. On March 23, 2016, almost nine months after the Debtors began their chapter 11 reorganization, Mar-Bow filed a proof of claim[7] in the amount of $1,250,000.00.[8] The record lacks clarity about the precise nature of Mar-Bow's business, but Mar-Bow is "beneficially owned and funded by" Jay Alix, the founder of the firm "AlixPartners." (Alix Decl. 1, Mar-Bow Mot. Compel Ex. A, App. 431.) AlixPartners is a consulting firm that competes with McKinsey in the turnaround consulting business.

### B. Background of the Underlying Bankruptcy Case

On August 3, 2015, the Debtors began the bankruptcy proceedings by filing voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, which allows for reorganization—rather than liquidation—of a bankruptcy estate. The Bankruptcy Court

---

[7] A proof of claim is the document that a creditor of bankruptcy debtor files in order to register the amount and nature of the debt owed to the creditor.

[8] McKinsey asserts that, after the Debtors retained McKinsey, "Mar-Bow purchased an inconsequential claim. . . . [solely] to litigate against McKinsey RTS." (McKinsey Br. 19, ECF No. 38.) No party contests, however, that Mar-Bow properly filed a proof of claim and remains an unsecured creditor of the Debtors.

consolidated all the petitions for procedural purposes only, meaning that one chapter 11 bankruptcy action was pending.

Three weeks later, on August 24, 2015, the Debtors filed an application in the Bankruptcy Court requesting permission to employ McKinsey as a turnaround advisor for the pendency of the bankruptcy case (the "Retention Application").[9] The Debtors sought to retain McKinsey "as their turnaround advisor . . . to assist the Debtors with the development and refinement of their strategic business plan." (Retention Appl. 2–3, App. 2–3.) On September 17, 2015, the Bankruptcy Court granted the Retention Application and authorized the Debtors to retain McKinsey as turnaround advisor.

On March 23, 2016, more than six months after McKinsey's employment had been approved, Mar-Bow filed its proof of claim against ANR, entering the bankruptcy proceeding. On May 1, 2016, Mar-Bow filed its first notice of appearance in the bankruptcy proceeding. Since entering the bankruptcy proceeding, Mar-Bow has raised the issue of McKinsey's

---

[9] The full title of the Retention Application was "Application of the Debtors, Pursuant to Sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1, for an Order Authorizing Them to Retain and Employ McKinsey Recovery & Transformation Services U.S., LLC[,] as Turnaround Advisor for the Debtors, Effective as of the Petition Date." (Retention Appl. 1, App. 1.)

Section 327(a) permits the employment of "professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons," to assist in conducting bankruptcy proceedings. 11 U.S.C. § 327(a). Section 328(a) governs the "terms and conditions" of "the employment of a professional person under section 327," 11 U.S.C. § 328(a), and Rule 2014(a) states the procedures by which an application for professional employment must be filed, Fed. R. Bank. P. 2014(a). Section 1107(b) authorized the Debtors to employ McKinsey during the bankruptcy, even though they had employed McKinsey "before the commencement of the case." 11 U.S.C. § 1107(b). Finally, Local Bankruptcy Rule 2014-1 governs service of motions. E.D. Va. Loc. Bankr. R. 2014-1.

Rule 2014 disclosures to the Bankruptcy Court formally at least five times.[10] The Court does not

see—and neither party identifies—any other action by Mar-Bow in the Bankruptcy Court.

On July 12, 2016, five days after a lengthy evidentiary hearing on the matter, the

Bankruptcy Court entered a written order confirming the Debtors' Reorganization Plan.[11] The

Reorganization Plan became effective on July 26, 2016. Additional proceedings have taken

place in the Bankruptcy Court since then, and Mar-Bow has continued to object to McKinsey's

Rule 2014 disclosures.

### C. McKinsey's Employment as Turnaround Advisor for the Debtors

On August 24, 2015, three weeks after filing for bankruptcy, the Debtors filed the

Retention Application in the Bankruptcy Court requesting permission to employ McKinsey as a

turnaround advisor for the pendency of the bankruptcy case. The Debtors sought to retain

McKinsey "as their turnaround advisor . . . to assist the Debtors with the development and

refinement of their strategic business plan." (Retention Appl. 2–3, App. 2–3.)

---

[10] The Court discusses Mar-Bow's objections to McKinsey's Rule 2014 disclosures in detail later in the Memorandum Opinion. Mar-Bow's five objections include three that the Court addresses in this Memorandum Opinion: (1) Mar-Bow's Motion to Compel Rule 2014 Compliance; (2) Mar-Bow's Motion to Clarify the Order Granting Mar-Bow's Motion to Compel; and, (3) Mar-Bow's Objection to the Reorganization Plan. Mar-Bow also formally objected two other times, which the Court addresses in the *Mar-Bow II* Memorandum Opinion. Those objections are: (1) Mar-Bow's Objection to McKinsey's Third Interim Fee Application; and, (2) Mar-Bow's Objection to McKinsey's Final Fee Application. Finally, Mar-Bow admits that, before filing its Motion to Compel or any other objections to McKinsey's Rule 2014 disclosures, it "brought [the] matter to the attention of the [U.S. Trustee] on March 7, 2016." (Mar-Bow Mot. Compel. 7, Supplemental Appendix ("Supp.") 1509.)

[11] Reorganization is the ultimate goal of a chapter 11 bankruptcy proceeding, and the Reorganization Plan is the method by which chapter 11 debtors emerge from bankruptcy.

In accordance with Federal Rule of Bankruptcy Procedure 2014(a),[12] the Debtors

attached to the Retention Application a copy of the "Amended and Restated Agreement" Letter,

(the "Engagement Letter") which detailed the proposed terms of McKinsey's employment as

turnaround advisor for the Debtors, and the proposed fee arrangement. As turnaround advisor,

McKinsey's role was to help the Debtors save money and become more profitable, which would

in turn increase the bankruptcy estate and result in maximum recovery for the Debtors'

creditors.[13] The Debtors requested that McKinsey's employment be approved as of August 3,

---

[12] Rule 2014(a) sets forth the required contents of an application in a bankruptcy court for the employment of a bankruptcy professional. Rule 2014(a) states in full:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). Relevant to the Engagement Letter, Rule 2014(a) requires that an application to employ a professional include "the professional services to be rendered, [and] any proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a).

[13] As stated in the Retention Application, McKinsey's role was to

> assist the Debtors with the development and refinement of their strategic business plan . . . . [and] provid[e] chapter 11 advisory services, which include contingency planning, interim management, cash flow and liquidity assessment, forecasting and management, analysis and/or development of business and strategic plans, development and implementation of creditor and/or supplier strategies and

2015, the date the Debtors filed for bankruptcy, because McKinsey had been working with the Debtors since June 29, 2015, before the Debtors filed for bankruptcy.

As a term of McKinsey's employment, the Debtors agreed to indemnify McKinsey for a broad array of potential liabilities arising out of McKinsey's employment as turnaround advisor. McKinsey would *not* be indemnified, however, from liabilities resulting from its own "willful misconduct or gross negligence."[14] (Engagement Letter 6, App. 24.)

The Retention Application was unopposed, and on September 17, 2015, the Bankruptcy Court granted the Retention Application, approved the terms of the Engagement Letter, and authorized the Debtors "to employ and retain [McKinsey] as turnaround advisor." (Retention O. 1–6, Supp. 291–97.) These events all occurred six months before Mar-Bow first appeared in the bankruptcy case.

### D.   McKinsey's Rule 2014 Disclosures

Federal Rule of Bankruptcy Procedure 2014(a) requires that any application for the employment of professionals

> be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  On its own and in response to motions, McKinsey filed multiple

---

development and implementation of operational and/or financial improvement or turnaround plans.

(Retention Appl. 3, App. 3.)

[14] Specifically, the Engagement Letter provided, *inter alia*, that the Debtors would indemnify McKinsey for all "losses, claims, penalties, damages[,] or liabilities" arising out of McKinsey's engagement, except for "any loss, claim, damage, penalty, liability, cost, fee[,] or expense which is finally judicially determined by a court of competent jurisdiction on the merits to have resulted from the willful misconduct or gross negligence of [McKinsey]." (Engagement Letter 5–6, App. 23–24.)

declarations pursuant to Rule 2014. Mar-Bow objected repeatedly to these disclosures, even as they became increasingly more specific and detailed. Mar-Bow, it seems, especially objected—and continues to object—to the aspect of McKinsey's disclosures that the Bankruptcy Court reviewed only *in camera*. Mar-Bow seeks to place these disclosures on the public record. A summary of McKinsey's Rule 2014 disclosures follows.

1.     **McKinsey's First Set of Rule 2014 Disclosures**

Pursuant to Rule 2014, the Debtors attached to the Retention Application the "Declaration of Kevin Carmody" (the "First Carmody Declaration"), which included a "Disclosure Regarding [McKinsey's] Disinterestedness." (First Carmody Decl. 10–18, App. 39–47.) In the Disclosure Regarding Disinterestedness, Carmody explained the process McKinsey used[15] to identify any connections it had with the Debtors, the United States Trustee and the Bankruptcy Court, and parties "identified on the interested parties list," (the "Interested Parties"). (*Id.* at 10–18, App. 39–47.) The First Carmody Declaration also outlined McKinsey's connections with the Interested Parties.

---

[15] McKinsey took the following steps to determine what connections it had with parties on the interested parties list:

> (a) emailed members of McKinsey RTS and the McKinsey RTS Team and searched its global client database to determine the existence of any client services provided by such employees within the last three years to parties in interest (the "Interested Parties") identified on the interested parties list . . . , (b) emailed members of McKinsey RTS, the McKinsey RTS Team and partners at affiliates that provide consulting services to determine the existence of client services provided by employees within the last three years to any client that focused on a direct commercial relationship or transaction with the Debtors and (c) emailed all employees of McKinsey RTS and its affiliates to request information on any relationships with the Debtors, the United States Trustee and the Bankruptcy Court, as well as equity ownership in the Debtors.

(First Carmody Decl. 11, App. 40.)

The First Carmody Declaration disclosed McKinsey's connections by category, number of connections, and general nature of work performed for the connection, rather than identifying connections with the interested parties by name. For example, McKinsey disclosed that a member of its team "attended a proposal meeting and submitted a proposal to *a Major Competitor* that was not accepted." (*Id.* at 12, App. 41 (emphasis added).) McKinsey also reported specific connections with "one Major Unsecured Noteholder, one Lender Under A/R Facility, three Major Customers, one Revolving Facility Lender, one Other Major Supplier of Goods and Services, one Party to Material Unexpired Leases, and one Party to Joint Ventures," among numerous other categories and connections. McKinsey's initial disclosure of its connection with Interested Parties by category became a source of controversy in Mar-Bow's subsequent objections to McKinsey's Rule 2014 disclosures.

The Bankruptcy Court reviewed the First Carmody Declaration before entering the Retention Order approving McKinsey's employment as turnaround advisor. (Retention O. 2, Supp. 292.) On September 17, 2015, after its review, the Bankruptcy Court found that McKinsey qualified as "a 'disinterested person' as such term is defined under section 101(14) of the Bankruptcy Code."[16] (Retention O. 2, Supp. 292.)

---

[16] Section 101(14) states in full:

The term "disinterested person" means a person that—
    **(A)** is not a creditor, an equity security holder, or an insider;
    **(B)** is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
    **(C)** does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11. U.S.C. § 101(14).

## 2. McKinsey's Subsequent Rule 2014 Disclosures

McKinsey filed two supplemental Rule 2014 Disclosures, even before any objections had been lodged to its initial disclosures. On November 9, 2015, and March 25, 2016, McKinsey filed Supplemental Declarations of Kevin Carmody (respectively, the "Second Carmody Declaration" and the "Third Carmody Declaration"). Each declaration was "in support of" the Retention Application, and intended to "provide certain additional information." (Second Carmody Decl. 2, App. 67; Third Carmody Decl. 1–2, App. 72–73.) In each declaration, Carmody swore that McKinsey "continues to monitor the list of parties on the Interested Parties List against its own client records." (Second Carmody Decl. 3, App. 68; Third Carmody Decl. 2, App. 73.) Carmody also disclosed additional connections—again by category, number, and general nature of the work McKinsey completed for the connection.

## E. The Rule 2014 Objections

As discussed earlier, and most relevant to Mar-Bow's objections to McKinsey's Rule 2014 disclosures, Federal Rule of Bankruptcy Procedure 2014(a) requires that a professional seeking employment in a bankruptcy proceeding file "a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a). Rule 2014 contains no definition of "connections," nor does it explain further the level of detail required in a professional's Rule 2014 disclosures.

### 1. The U.S. Trustee's Rule 2014 Objection: The U.S. Trustee's Motion to Compel

The Bankruptcy Court first heard an objection to McKinsey's Rule 2014 disclosures when the United States Trustee (the "U.S. Trustee")[17] filed a motion to compel McKinsey to comply with Rule 2014[18] (the "U.S. Trustee Motion to Compel"). The U.S. Trustee filed its Motion to Compel on May 3, 2016, nine months after the bankruptcy proceeding began and two days after Mar-Bow first appeared in the proceeding.[19] In its Motion to Compel, the U.S. Trustee asserted that McKinsey's Rule 2014 disclosures failed to comply with Bankruptcy Rules. Specifically, McKinsey's "declarations disclosed only vague and amorphous connections to creditors and other major parties in interest," and "neither identified these connections by name nor provided any insight into the nature of the connections." (U.S. Trustee Mot. Compel 1–2, App. 78–79.) The U.S. Trustee asked the Bankruptcy Court to compel McKinsey to file additional disclosures, including

> a supplemental declaration stating, at a minimum, (a) the identity of the entities on the Interested Parties List . . . with which McKinsey RTS and any of its

---

[17] "U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings." *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003).

[18] The full title of the U.S. Trustee Motion to Compel was "Motion of the United States Trustee to Compel McKinsey Recovery & Transformation Service U.S., Turnaround Advisor for the Debtors, to Comply with the Requirements of Bankruptcy Rule 2014." (U.S. Trustee Mot. Compel. 1, App. 78.)

[19] The record indicates that the U.S. Trustee filed its Motion to Compel at least partially at Mar-Bow's urging. In Mar-Bow's later objection to McKinsey's Rule 2014 disclosures, Mar-Bow asserts that "Mar-Bow and its counsel had brought [the possible deficiency in McKinsey's Rule 2014 disclosures] to the attention of the United States Trustee Program on March 7, 2016, and expected that the United States Trustee's consequent motion to compel would result in McKinsey's full compliance with Rule 2014." (Mar-Bow Mot. Compel 7, App. 389.)

As noted, Mar-Bow filed its proof of claim on March 23, 2015, and entered its first appearance in the bankruptcy proceeding on May 1, 2016. Thus, it appears that Mar-Bow contacted the U.S. Trustee regarding McKinsey's Rule 2014 disclosures even before it was involved in the underlying bankruptcy proceeding.

affiliates have a connection . . . and (b) a general description of the connection with or work performed for these entities.

(*Id.* at 2, App. 79.)

The U.S. Trustee expressed concern that McKinsey's "failure to provide complete disclosures may also cast a cloud over the Debtors' restructuring strategy." (*Id.* at 11, App. 88.) Because McKinsey had assisted the Debtors in negotiating the terms of a financing agreement and the overall restructuring strategy, the U.S. Trustee argued that the Bankruptcy Court "should order McKinsey to supplement its disclosures so that all interested parties can meaningfully consider whether the Proposed Plan Transactions may be tainted by divided loyalties." (*Id.* at 12, App. 89.) Apparently anticipating that McKinsey might cite confidentiality concerns as a reason for limiting its disclosures, the U.S. Trustee asserted that "McKinsey's private contractual agreements do not and cannot supersede the ethics and disclosure requirements of the Bankruptcy Code and Rules." (*Id.* at 13, App. 90.)

On May 19, 2016, sixteen days later, the U.S. Trustee submitted a "Stipulation Resolving Motion of the [U.S. Trustee Motion to Compel]" (the "U.S. Trustee Stipulation"). The U.S. Trustee Stipulation stated that U.S. Trustee and McKinsey had engaged in "extensive discussions" to resolve the U.S. Trustee's concerns regarding McKinsey's Rule 2014 disclosures. (U.S. Trustee Stip. 2, App. 105.) After these discussions, McKinsey had agreed to file an additional declaration disclosing more information about its connections with Interested Parties.

The same day, pursuant to the U.S. Trustee Stipulation, McKinsey filed a third Supplemental Declaration of Kevin Carmody (the "Fourth Carmody Declaration"). The Fourth Carmody Declaration included more detailed information about McKinsey's connection to the Interested Parties. It also disclosed the names of various Interested Parties that McKinsey had "served" in the past two years. Carmody swore that McKinsey had only served those clients "on

matters unrelated to the Debtors and their chapter 11 cases." (Fourth Carmody Decl. 6, App. 99.)

McKinsey still omitted the names of at least three connections, which it identified as "confidential clients." (*Id.*) Before filing the Fourth Carmody Declaration, McKinsey "reviewed its confidentiality obligations to each of its clients identified as a Major Stakeholder or Major Competitor and, to the extent necessary, . . . request[ed] the consent of such client to disclose its name" in the Fourth Carmody Declaration. (*Id.* at 3, App. 96.) Clients who did not consent to the disclosure of their names were identified as "confidential clients." (*Id.* at 4, App. 97.)

The U.S. Trustee stated that it was satisfied that McKinsey's additional disclosures in the Fourth Carmody Declaration complied with Rule 2014.

### 2. Mar-Bow Remained Unsatisfied with McKinsey's Disclosures

#### a. Mar-Bow's First Rule 2014 Objection: Mar-Bow's Motion to Compel

On June 6, 2016, dissatisfied with the U.S. Trustee's proposed resolution of McKinsey's disclosures, Mar-Bow filed a 44-page Motion to Compel McKinsey to Comply with Rule 2014 (the "Mar-Bow Motion to Compel"). Mar-Bow asserted that "McKinsey's four disclosure declarations have not allowed the Court the opportunity to . . . independently assess McKinsey's qualifications to serve as a fiduciary for the Debtors." (Mar-Bow Mot. Compel 5, App. 387.) Mar-Bow voiced sweeping policy arguments that McKinsey's allegedly insufficient disclosures

threatened both the bankruptcy system's ability to function[20] and the integrity of the bankruptcy proceeding itself.[21]

Mar-Bow argued that McKinsey's disclosures were insufficiently specific to allow the Bankruptcy Court to evaluate McKinsey's disinterestedness. "McKinsey's broad, generic statements cannot supersede the specific descriptions of connections that case law interpreting Rule 2014 requires and cannot trump the obligation to perform a good faith investigation and to comply with the rule's requirements." (*Id.* at 21, App. 403.) Mar-Bow also contended that the process by which McKinsey conducted its search for connections was inadequate, rendering its disclosures insufficient.[22]

The Mar-Bow Motion to Compel sought an order from the Bankruptcy Court requiring McKinsey to submit significant additional disclosures and detail regarding McKinsey's connections to the interested parties in the case. Mar-Bow also asked the Bankruptcy Court to suspend payment of McKinsey's fees, and to disgorge all of McKinsey's previously paid fees "in the event that McKinsey fails to comply with the Court's order or the Court determines that McKinsey is not qualified to serve as a professional" in the case. (*Id.* at 42–43, App. 424–25.) Mar-Bow further requested an order that "McKinsey, its affiliates, and its professionals, shall not

---

[20] For example, Mar-Bow asserted that "[t]he systemic issues raised here are of grave importance to the credibility and proper functioning of the bankruptcy system. The court and all bankruptcy professionals should aspire to maintain a transparent bankruptcy system and a level field for all creditors and stakeholders." (Mar-Bow Mot. Compel 8, App. 390.)

[21] Mar-Bow contended that "[s]olicitations of bankruptcy representation opportunities 'go to the integrity of the process,' and must be disclosed by all professionals under Rule 2014, even if attorney rules of professional responsibility are inapplicable." (Mar-Bow Mot. Compel 28, App. 410 (quoting *In re Universal Bldg. Prods.*, 486 B.R. 650, 664 n.16 (Bankr. D. Del. 2010).)

[22] Because "McKinsey apparently cannot discover from the entire McKinsey & Company database checking system whether it was or is involved in any matter adverse to the Debtors," its "disclosures are built upon a foundation that is too deficient to carry the weight of the requirements of Rule 2014." (Mar-Bow Mot. Compel 30, 35, App. 412, 417.)

be entitled to a release, indemnity[,] or exculpation of any kind or nature in this case, whether through a plan of reorganization or otherwise." (*Id.* at 44, App. 426.)

### i. The Bankruptcy Court's Hearing on Mar-Bow's Motion to Compel

On June 28, 2016, the Bankruptcy Court held a hearing on Mar-Bow's Motion to Compel. In the hearing, the Bankruptcy Court allowed lengthy argument from both sides, actively engaging the parties as to their positions. Brushing aside some of McKinsey's procedural arguments in opposition to Mar-Bow's Motion to Compel, the Bankruptcy Court stated,

> And that's the point I was . . . trying to get across a few minutes ago about why it is so important that parties in interest bring these kinds of matters to the attention of the Court so the Court can deal with them. And just because we've got a great watering-down of Rule 2014 because nobody is, apparently, complying with the rule, doesn't mean that the rule shouldn't be enforced. It should be enforced.

(June 28, 2016 Hr'g Tr. 127, App. 2905.) The Bankruptcy Court identified "three different categories of things" that would affect its decision on the Mar-Bow Motion to Compel:

> One is these 121 actual known clients that have not been identified. Second is the investments of McKinsey Investment in other entities that [McKinsey] say[s] that if it does exist, should be disclosed . . . . And third is, . . . what were the results to the [email] survey?

(*Id.* at 134, App. 2912.)

The Bankruptcy Court solicited a statement from the U.S. Trustee, who "g[a]ve the Court pretty much a synopsis of what came about, and how [the Trustee Motion to Compel] ended up being withdrawn at the end." (*Id.* at 143, App. 2921.) Specifically, the U.S. Trustee stated that, after McKinsey filed the Fourth Carmody Declaration, "the U.S. Trustee was satisfied that McKinsey possessed no conflicts and had greatly improved the public record of its connections." (*Id.* at 145, App. 2923.) When asked whether the U.S. Trustee believed that McKinsey's disclosures satisfied Rule 2014, the Trustee responded, "If it were left up to me, I think my

solution to this problem would be for [McKinsey] to make the list [of their confidential clients] available and file it and ask that it be filed under seal." (*Id.* at 145–46, App. 2923–24.)

After lengthy argument in which the Bankruptcy Court heard from Mar-Bow, McKinsey, the U.S. Trustee, and ANR, the Bankruptcy Court ruled that it would require McKinsey to provide the Bankruptcy Court with additional information. The Bankruptcy Court stated that it would "require McKinsey to disclose the 121 [confidential] clients. . . . to the Court in camera." (*Id.* at 157, App. 2935.) The Bankruptcy Court "allow[ed] McKinsey to negotiate . . . with the debtor, with the committee, with the Office of the U.S. Trustee, and [Mar-Bow]" in order to have "the proper confidentiality provisions before anything is disclosed." (*Id.*) The Bankruptcy Court stated that its

> purpose here is not to destroy McKinsey's business model [of confidentiality].[23] It's certainly not to give a competitive advantage to a competitor. The Court's going to be completely respectful of all of that, but I am not going to do anything to impair the integrity of Rule 2014. . . .
> . . . McKinsey's a professional. . . . They're a fiduciary. They're employed by the fiduciary. They're held to the same standard.

(*Id.* at 158, App. 2936.) The Bankruptcy Court also ordered that McKinsey provide it with information that "the [Bankruptcy] Court needs to have . . . in order to make the disclosures that have been provided in this case meaningful." (*Id.*)

---

[23] In the hearing, *Mar-Bow* discussed in great detail McKinsey's confidentiality practices:

> [McKinsey] holds out that it maintains a strict policy of confidentiality regarding its clients. Its Web site proclaims, "We guard client confidences." And then again, "We don't publicize our work for our clients."
> . . . .
> The code of ethics [McKinsey's founder] promoted included this commitment to confidentiality, and as a result, McKinsey never talks about its clients. Its clients can talk about McKinsey, and some of them have[,] but McKinsey never talks about its clients.

(June 28, 2016 Hr'g Tr. 93–94, App. 2871–72.)

### ii. The Bankruptcy Court's Order Compelling Compliance[24]

On July 1, 2016, three days after argument on Mar-Bow's Motion to Compel, the Bankruptcy Court entered an order granting Mar-Bow's Motion to Compel in certain respects, as stated at the June 28, 2016 Hearing (the "Order Compelling Compliance"). Specifically, the Bankruptcy Court ordered McKinsey to deliver to the Bankruptcy Court, for *in camera* review:

(1) "A list containing the names of the 121 undisclosed connections discussed at the hearing, together with sufficient information for the Court to determine (1) whether any of those connections constitute an interest that is adverse to the estate and (2) whether McKinsey is disinterested, all as required by 11 U.S.C. § 327";

(2) "Identification of Interested Parties that manage investments for MIO Partners, Inc.," a McKinsey affiliate;

(3) "Identification of Interested Parties in which MIO owns securities," subject to several limitations"; and,

(4) "The survey response rates to the email surveys" sent by McKinsey to determine the presence of connections, "together with sufficient information for the Court to determine (1) whether any of those connections constitute an interest that is adverse to the estate and (2) whether McKinsey is disinterested, all as required by 11 U.S.C. § 327."

(O. Compelling Compliance 2–3, App. 1520–21.)

### b. Mar-Bow's Second Rule 2014 Objection: Mar-Bow's Motion to "Clarify"

On July 5, 2016, four days later, Mar-Bow filed a "Motion to Clarify" the Bankruptcy Court's July 1, 2016 Order. Mar-Bow contended that, although the Order Compelling Compliance provided for *in camera* review of McKinsey's additional disclosures and allowed the U.S. Trustee and professionals employed by the Debtors to review the additional information, the Order Compelling Compliance "does not appear to allow Mar-Bow's professionals to

---

[24] Mar-Bow appeals the Order Compelling Compliance, which the Court addresses in this Memorandum Opinion.

review" the information. (Mot. Clarify 1–2, App. 1525–56.) Although Mar-Bow expressly stated that its Motion to Clarify was "not a motion for reconsideration," (*id.* at 1, App. 1525), Mar-Bow devoted more than a full page to argument about why Mar-Bow should be allowed to review the additional information because Mar-Bow was the party "that first shed light on McKinsey's failure to comply with Rule 2014," and the party who "has demonstrated the greatest commitment to assist the Court in fulfilling its obligation to maintain the integrity of its processes through strict enforcement of . . . Rule 2014," (*id.* at 2–3, App. 1526–27).

### i. The Bankruptcy Court's Rulings on Mar-Bow's Motion to "Clarify"

On July 7, 2016, the Bankruptcy Court heard argument on Mar-Bow's Motion to Clarify. Mar-Bow reasserted its position that "it seems a bit anomalous, and frankly, a bit inequitable [for Mar-Bow] to do all the work to negotiate the confidentiality agreement, and then not participate in the process that that confidentiality agreement designs." (July 7, 2016 Hr'g Tr. 16, App. 2988.) The Bankruptcy Court also heard from McKinsey and the U.S. Trustee, and stated that it would "reserve for a later time whether Mar-Bow or anybody else was going to receive [McKinsey's additional disclosures]." (*Id.* at 21, App. 2993.)

At the time of hearing, the Bankruptcy Court—remarkably, given the timing of Mar-Bow's Motion to Clarify—had already reviewed the additional information it ordered McKinsey to disclose. The Bankruptcy Court stated, based on its review of the *in camera* production, that it was "completely satisfied that there is not any type of disinterested problem with McKinsey going forward." (*Id.*) It further stated that it was "very satisfied with the information in" McKinsey's *in camera* disclosure. (*Id.*)

On July 15, 2016, the Bankruptcy Court entered an Order addressing Mar-Bow's Motion to Clarify (the "Clarification Order").[25] The Bankruptcy Court ordered that twenty-one days after the parties had reviewed the accompanying Confidentiality Order, the U.S. Trustee could file "a recommendation with the Court whether any further public disclosures should be made." (Clarification O. 2, App. 1950.) After the U.S. Trustee filed its recommendation, the Bankruptcy Court would determine whether McKinsey would be required to file "further public disclosures." (*Id.*) The Bankruptcy Court denied any further requests in Mar-Bow's Motion to Clarify. (*Id.*)

Also on July 15, 2016, the Bankruptcy Court entered a "Confidentiality Order Pursuant to Order Dated July 1, 2016" (the "Confidentiality Order").[26] The Confidentiality Order governed the "information submitted to the [Bankruptcy] Court for in *camera review* [sic] pursuant to the July 1 Order, relating to the disclosure of [McKinsey's] connections under Bankruptcy Rule 2014 and any further information McKinsey . . . provides to satisfy such requirements." (Confidentiality O. 2, App. 1977.) The Confidentiality Order provided that McKinsey could designate a document as confidential by placing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document, which would constitute a "certification by McKinsey . . . that the information is treated as confidential by McKinsey . . . and its affiliates." (*Id.* at 2–3, App. 1977–78.) The Confidentiality Order also designated categories of persons allowed to review confidential information, and expressly excluded people who are "employees, directors,

---

[25] Mar-Bow appeals the Clarification Order, which the Court addresses in this Memorandum Opinion.

[26] Mar-Bow appeals the Confidentiality Order, which the Court addresses in this Memorandum Opinion.

or officers of a competitor of McKinsey RTS and its affiliates" or people who are "a direct competitor of McKinsey RTS or its affiliates."[27] (*Id.* at 4, App. 1979.)

### ii. The U.S. Trustee Recommended that McKinsey Publicly File Additional Rule 2014 Disclosures

On August 5, 2016, the U.S. Trustee filed a "Statement of the Recommendation of the United States Trustee on Public Disclosures by McKinsey RTS" (the "U.S. Trustee Recommendation"). The U.S. Trustee acknowledged that the Bankruptcy Court had already found that McKinsey was a disinterested person, and "the sole issue for adjudication now is what further public disclosures McKinsey . . . should make." (U.S. Trustee Rec. 3, App. 2353.) The U.S. Trustee recommended that McKinsey make additional public disclosures "[b]ecause Rule 2014 does not define connections, and because transparency is critical to the integrity of the bankruptcy process." (*Id.*) The U.S. Trustee recommended that McKinsey make the following additional disclosures:

1) "Every name on the list of interested parties provided by the Debtors ("interested parties' list") with whom either McKinsey RTS or personnel borrowed from an affiliate thereof, has a connection and a statement whether any services provided were related to or adverse to the Debtors . . . for a period of three years before the petition date";

2) "Every name on the interested parties' list who was a client of any McKinsey RTS affiliate with respect to 'a direct commercial relationship or transaction' with the Debtors . . . for a period of three years before the petition date";

3) "Every name on the interested parties' list that previously employed McKinsey RTS personnel . . . for a period of three years before the petition date"; and,

---

[27] This exclusion meant that no employee, director, or officer of Mar-Bow could view the confidential information.

4) "Every name of a professional on the interested parties' list that represents or represented McKinsey RTS or its affiliates . . . for a period of three years before the petition date."

(*Id.* at 3–4, App. 2353–54.) The U.S. Trustee asserted that "[t]he disclosures made to date, with the additional disclosures recommended here, will satisfy Rule 2014." (*Id.* at 4, App. 2354.)

### iii.    McKinsey Publicly Filed Additional Rule 2014 Disclosures

The same day, McKinsey filed the "Declaration of Kevin Carmody in Respect of Recommendation of [U.S.] Trustee" (the "Fifth Carmody Declaration"). The Fifth Carmody Declaration "provide[d] th[e] disclosure" that the U.S. Trustee recommended. (Fifth Carmody Decl. 2, App. 2392.)

### F.    The Debtors' Reorganization Plan

While Mar-Bow and McKinsey were litigating the sufficiency of McKinsey's Rule 2014 disclosures, the rest of the bankruptcy proceedings continued to move forward. On May 25, 2016, the Debtors filed the "Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession" (the "Reorganization Plan" or "Plan"), which set forth the proposed reorganization terms.

### 1.    Mar-Bow's Third Rule 2014 Objection: Mar-Bow's Reorganization Plan Objection

On June 29, 2016, Mar-Bow filed its "Preliminary Objection . . . to the Joint Plan" (the "Mar-Bow Reorganization Plan Objection"). Mar-Bow objected to confirmation of the Reorganization Plan because McKinsey's

> disclosures of its connections are insufficient to enable [Mar-Bow] to determine whether (a) the proposed sale is in the best interests of the creditors of these Estates, one of which is [Mar-Bow], or (b) the "confidential offer for certain

> assets of the Debtors" is included in this or any other transaction contemplated by
> the Plan.

(Mar-Bow Reorganization Plan Obj. 2–3, App. 1485–86.) Mar-Bow further argued that

provisions of the Plan that released, excused, and indemnified various professionals from

liability for actions taken in connection with the restructuring were not appropriate, as applied to

McKinsey, "given that McKinsey . . . has not disclosed all of its connections as required by

Rule 2014. Without that complete disclosure, [Mar-Bow] is unable to determine whether the

Plan is in its best interests or is tainted by a lack of disinterestedness or a conflict of interest."

(*Id.* at 4, App. 1487.)

### a. The Bankruptcy Court Heard Mar-Bow's Reorganization Plan Objection

On July 7, 2016, after hearing argument on Mar-Bow's Motion to Clarify, the

Bankruptcy Court conducted a four-and-a-half-hour long evidentiary hearing (the "Plan

Confirmation Hearing"). At the Plan Confirmation Hearing, the Bankruptcy Court heard

testimony and received declarations offered as exhibits. It also heard argument on Mar-Bow's

Reorganization Plan Objection.

Mar-Bow asserted that its objection was "in the nature of a limited objection. And it's

based on the fact the disclosure has not been made—sufficient disclosure has not been made."

(July 7, 2016 Hr'g Tr. 113, App. 3085.) Mar-Bow suggested that "the way [its] limited objection

could be satisfied would be to carve McKinsey's exculpation and release out of the [P]lan

pending the resolution of the [Rule 2014] dispute." (*Id.* at 114, App. 3086.)

Expressing confusion about the link between Mar-Bow's objection and the remedy it

sought, the Bankruptcy Court asked, "[W]hy would [additional Rule 2014 disclosures from

McKinsey] make any difference with regard to the exculpation provisions in the [P]lan?" (*Id.* at

115, App. 3087.) Mar-Bow responded that it did not "believe that an adequate disclosure has

been made," and that it was its "belief that McKinsey has connections with or represents, if not all, virtually all of the lenders in this case." (*Id.* at 116, App. 3088.) Mar-Bow seemed to argue, essentially, that McKinsey could not "demonstrate that it has undivided loyalty to the debtor, and therefore, [Mar-Bow] believe[s] that they're not disinterested, and therefore, they should not have the benefit of an exculpation or a release in this case." (*Id.*)

Trying again to discern the basis for Mar-Bow's objection to the release and exculpation provisions, the Bankruptcy Court stated

> [M]aybe I'm confused about what you're actually objecting to as far as exoneration is concerned. . . .
>
> Because [the exoneration provision] just sets the standard of proof, does it not. . . . [I]t's just negligence and such that receives the benefit of exoneration and it has to be brought before this Court . . . .
>
> . . . [W]e have an affirmative statement from McKinsey that says we are disinterested . . . . And if they're intentionally shown that that's not the case, then why would anything—exoneration make any difference as far as [Mar-Bow]?

(*Id.* at 117–18, App. 3089–90.) Mar-Bow responded, "I don't necessarily agree with the proposition, Your Honor. I believe that exoneration and release will effectively preclude our ability to get to the bottom of this matter." (*Id.* at 118, App. 3090.)

In argument, McKinsey expressed the same confusion the Bankruptcy Court had: "I think a party standing up and saying I don't know certain names does not connect the dots as to why that has anything to do with the exculpation and releases in the plan." (*Id.*) Counsel for the Debtors conveyed similar bewilderment:

> We have, as far as I know, an order on the docket finding disinterestedness. So we would suggest that to the extent there is some issue that needs to be addressed by the Court in due course, it can be done, but it should not affect [the Plan] confirmation.
> . . . [I]f there was some effort to defraud the Court and not disclose something, that would not be, by its terms, covered by our releases and

exculpation. And it sounds like that's the concern and I don't think that's something we're asking the Court to give people a free pass on.

(*Id.* at 120–21, App. 3092–93.)

The Bankruptcy Court overruled Mar-Bow's objection, stating, "I think I've dealt with that. . . . And I'm absolutely satisfied, as I said before, McKinsey is [a] disinterested party based on everything that I've seen, which was far more than adequate submission that I received yesterday." (*Id.* at 121–22, App. 3093–94.)

###    b.    The Bankruptcy Court's Factual Findings Regarding the Reorganization Plan

During the Plan Confirmation Hearing, the Bankruptcy Court made numerous factual findings about the Reorganization Plan, the release and exculpation provisions, and the role the professionals played in developing the Plan and making it successful.[28] Specifically, the Bankruptcy Court found:

- "[T]he contributions of the released parties are significant in this case. In fact, this reorganization would not occur but for those [contributions]." (*Id.* at 176, App. 3148)

- The release and exculpation provisions were appropriate, in part because of "the significant contribution of assets, the fact that it was essential to the reorganization, that there was overwhelming acceptance of the plan, and that there wouldn't be a distribution to any of these parties without it, and in fact, no parties that are participating in any of this are getting—are objecting to the release." (*Id.*)

- "And so I think also very, very importantly in this case, . . . the releases . . . . are part of a plan. It was put into the plan, and all the creditors got to vote on this. And I think that that is extremely important, that it was baked into the plan, part of the plan, and everybody got a chance to be a part of that. . . . [That's] something that I consider very, very highly in approving these releases." (*Id.*)

- The Plan "has a substantial consensus of the various constituencies, [and] significant support of all of the creditors and other parties-in-interest." (*Id.* at 191, App. 3163)

- "[A]ll of the professionals involved in the case [contributed to] . . . . a very, very successful resolution to [the Plan]." (*Id.* at 192, App. 3164)

---

[28] Mar-Bow challenged none of these findings at the hearing, and it challenges none of these findings in this appeal or in its *Mar-Bow II* appeal.

### c. The Bankruptcy Court's Order Confirming the Reorganization Plan[29]

On July 12, 2016, the Bankruptcy Court entered a written order confirming the

Reorganization Plan and overruling objections to it. The Bankruptcy Court found that the Plan's

basic transaction would not occur without the release and exculpation provisions:

> NewCo will not enter into the Stalking Horse APA and consummate the
> transactions contemplated thereby, thus adversely affecting the Debtors' Estates
> and undermining the ability of the Debtors to consummate the Plan, if: . . . the
> injunction, exculpation and release provisions in the Plan were not approved by
> the Bankruptcy Court.

(Reorganization Plan ¶ WW, App 1763.) The Bankruptcy Court also found that "the provisions

of the Plan constitute a good faith compromise and settlement of all Claims and controversies

resolved pursuant to the Plan." (*Id.* ¶ GGG, App. 1767.) The Reorganization Plan became

effective on July 26, 2016, and it was "deemed to be substantially consummated" on that day.

(*Id.* at 84, App. 1824.)

### 2. Mar-Bow Moved to Stay Implementation of the Reorganization Plan

Three days later, on July 15, 2016, Mar-Bow appealed narrow provisions of the Order

Confirming the Reorganization Plan, and moved to stay implementation of the Reorganization

Plan pending appeal (the "Motion to Stay"). Mar-Bow did not request an expedited hearing, and

the Bankruptcy Court heard Mar-Bow's Motion to Stay on August 25, 2016, almost one month

after the Reorganization Plan had become effective.

### a. The Bankruptcy Court's Hearing on Mar-Bow's Motion to Stay

At the hearing on Mar-Bow's Motion to Stay, Mar-Bow acknowledged that part of why it

sought a stay of the Confirmation Order was to "preserve and protect its appeal rights [because

---

[29] Mar-Bow appeals narrow provisions of the Order Confirming the Reorganization Plan, which the Court addresses in this Memorandum Opinion.

s]ome courts have suggested that the failure to seek a stay and the failure to obtain the stay will deprive the appellant of appeal rights on the basis of equitable mootness." (Aug. 25, 2016 Hr'g Tr. 13, App. 3459.) Mar-Bow asserted that it "is not contesting the plan, is not contesting the feasibility of the plan, is not trying to undo the plan, is not trying to impose any current or potential liability on McKinsey as it relates to its performance as the turnaround advisor, except with respect to failures to disclose." (*Id.* at 18, App. 3464.) Twice in the hearing, Mar-Bow asserted that "if the Court were to rule today that the exculpation and release provisions do not apply to McKinsey's obligations under Rule 2014 and the consequences that flow from its failure to satisfy its obligations, Mar-Bow wouldn't need a stay." (*Id.* at 13, 33, App. 3459, 3479.) The Bankruptcy Court, expressing some of the same confusion it displayed when discussing Mar-Bow's objections to the Reorganization Plan, stated, "[E]xculpation has to do with the fact that there's a burden of proof that if they've done something wrong—I mean, if it doesn't apply to Rule 2014, that's a different issue." (*Id.* at 28, App. 3474.)

### b. The Bankruptcy Court Denied Mar-Bow's Motion to Stay

The Bankruptcy Court denied Mar-Bow's Motion to Stay, concluding that Mar-Bow had not made the requisite showing to support granting a stay of the Reorganization Plan. The Bankruptcy Court also stated that it

> just can't see how the disclosures that have been made in this case were not adequate, how McKinsey should not have been entitled to the exculpation and release provisions that were an integral part of the plan and they very much were and the Court made specific findings with regard to that. There was no evidence offered at the confirmation hearing that would contradict that and, in fact, all of the evidence was in favor of that.

(*Id.* at 47, App. 3493.)

On August 29, 2016, the Bankruptcy Court entered an order denying Mar-Bow's Motion to Stay (the "Stay Order"), and a Memorandum Opinion explaining its reasoning (the "Stay

Memorandum Opinion").[30] The Stay Memorandum Opinion contains a thorough discussion of the background of the underlying bankruptcy case and the litigation between Mar-Bow and McKinsey regarding Rule 2014 disclosures. The Stay Memorandum Opinion reiterated the Bankruptcy Court's findings that: (1) the Confirmation Plan "was universally accepted . . . by all the impaired creditor classes that were entitled to vote," (Stay Mem. Op. 1, App. 2449); (2) the Reorganization Plan involved a "web of interrelated settlements that had been painstakingly woven together," (*id.* at 15, App. 2463); (3) after the Bankruptcy Court "thoroughly reviewed the *[i]n [c]amera* Disclosures, . . . it was satisfied that McKinsey . . . had complied in good faith with the Order Compelling Compliance and that McKinsey . . . was a 'disinterested person' under the Bankruptcy Code," (*id.* at 16, App. 2464); (4) "McKinsey . . . w[as] essential to the formulation and prosecution of a largely consensual plan of reorganization, . . . [and a]bsent the involvement of these professionals, and their extensive efforts to reach the interconnected settlements . . . , this Bankruptcy Case could have become mired in costly, protracted litigation," (*id.* at 17, App. 2465); and, (5) "the Plan incorporates a delicate balance of settlements involving numerous parties," and "Mar-Bow threatens to disrupt the hard-fought global peace achieved among the Debtors and all of their major stakeholders that is memorialized in the confirmed Plan," (*id.* at 24, App. 2472). The Stay Memorandum Opinion also included the Bankruptcy Court's denial of Mar-Bow's request to require McKinsey to make public any more of its Rule 2014 disclosures that the Bankruptcy Court had reviewed *in camera*. The Bankruptcy Court did so at least in part to "accommodate the anticompetitive concerns raised by McKinsey." (*Id.* at 10 n.15, App. 2458.)

---

[30] Mar-Bow appeals both the Stay Order and the Stay Memorandum Opinion, which the Court addresses in this Memorandum Opinion.

## III. Procedural History

On July 19, 2016, Mar-Bow filed its Appeal in this Court, noting its appeal from the Order Compelling Compliance, "but only as to ¶¶ 2–4." (ECF No. 1.) On July 20, 2016, Mar-Bow filed a second appeal, noting its appeal from the Reorganization Plan, "but only as to Findings of Fact ¶¶ J (final sentence), III–KKK, and Order ¶¶ D.31-33, J.52, J.53, and attached Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, . . . §§ III.5, III.E.6, III.E.7, and only as to [McKinsey]." (*Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs.*, 3:16cv613, ECF No. 1-1.) On September 29, 2016, "in the interest of judicial economy, and based upon the agreement of the parties," the Court consolidated two of Mar-Bow's appeals into this case.[31] (Sept. 29, 2016 O. 1, ECF No. 21.) Mar-Bow later filed several amended notices of appeal, noting its appeal from the following additional rulings by the Bankruptcy Court: (1) the Clarification Order; (2) the Stay Order; and, (3) the Stay Memorandum Opinion.[32] (*See* App. 2711.) In all, the following orders of the Bankruptcy Court are before the Court in this appeal:

---

[31] Mar-Bow also had a third appeal pending at the time the Court consolidated the two appeals—*Mar-Bow II*. McKinsey, however, opposed consolidation of all three appeals. The Court consolidated only the two appeals.

[32] On December 29, 2016, Mar-Bow filed a "Third Amended and Supplemental Notice of Appeal" (the "Third Amended Notice"). (ECF No. 41.) In the Third Amended Notice, Mar-Bow added an appeal of: (1) the "December 20, 2016 Memorandum Opinion"; (2) the "Order Granting [McKinsey's] Motion to Dismiss [Mar-Bow's] Final Fee Objection"; and, (3) the Order Granting McKinsey's Final Fee Application. The same day, Mar-Bow filed a "Second Amended and Supplemental Notice of Appeal" in *Mar-Bow II*. That notice also appealed these three additional rulings of the Bankruptcy Court.

The Court cannot discern why Mar-Bow attempts to appeal the same three rulings in two different cases. Mar-Bow not only fails to acknowledge its duplicative appeals in the filings before this Court, but also directs the Court to no authority—substantive or procedural—entitling it to appeal the same orders two separate times. The Court, therefore, will address Mar-Bow's appeal of the December 20, 2016 Memorandum Opinion, the Order Granting McKinsey's Motion to Dismiss Mar-Bow's Final Fee Objection, and the Order Granting McKinsey's Final Fee Application in the *Mar-Bow II* Memorandum Opinion.

(1)     Order Compelling Compliance;

(2)     Clarification Order;

(3)     Confidentiality Order;

(4)     Order Confirming the Reorganization Plan, but only narrow provisions;

(5)     Stay Order; and,

(6)     Stay Memorandum Opinion.

Mar-Bow filed its Opening Brief, ANR and McKinsey both responded, and Mar-Bow replied. McKinsey also filed two motions to dismiss. First, McKinsey moved to dismiss Mar-Bow's appeal of the Reorganization Plan, the Stay Order, and the Stay Memorandum Opinion as equitably moot. Mar-Bow responded, and McKinsey replied. McKinsey also moved to dismiss Mar-Bow's appeal of the Order Compelling Compliance, the Clarification Order, and the Confidentiality Order for lack of standing. Mar-Bow responded, and McKinsey replied.

For the reasons that follow, the Court will grant both of McKinsey's motions to dismiss. The Court will dismiss Mar-Bow's appeal of the Plan, the Stay Order, and the Stay Memorandum Opinion as equitably moot. The Court will dismiss Mar-Bow's appeal of the Order Compelling Compliance, the Clarification Order, and the Confidentiality Order for lack of standing.[33] The Court will dismiss each of Mar-Bow's appeals of the Bankruptcy Court's rulings.

---

[33] As previously discussed, Mar-Bow also filed a Notice of Appeal in this case purporting to appeal (1) the December 20, 2016 Memorandum Opinion; (2) the Order Granting McKinsey's Motion to Dismiss Mar-Bow's Final Fee Objection; and, (3) the Order Granting McKinsey's Final Fee Application. Because those rulings are on appeal in *Mar-Bow II*, the Court does not address them in this case. To the extent that a ruling on those opinions is necessary, the Court dismisses Mar-Bow's appeal of those rulings for the reasons set forth in its *Mar-Bow II* Memorandum Opinion.

## IV. Analysis: Mar-Bow's Appeal of the Reorganization Plan Rulings

Mar-Bow appeals three of the Bankruptcy Court's rulings relating to the Reorganization Plan. First, Mar-Bow appeals narrow provisions of the Reorganization Plan itself, as outlined below. Second, Mar-Bow appeals the Bankruptcy Court's denial of its Motion to Stay, as ruled on in the August 25, 2016 hearing and set forth in the Stay Order, and the Stay Memorandum Opinion.[34]

### A. The Scope of Mar-Bow's Reorganization Plan Rulings Appeal

Mar-Bow appeals only several narrow aspects of the Reorganization Plan itself. Specifically, Mar-Bow appeals the Reorganization Plan "only as to Findings of Fact ¶¶ J (final sentence), III–KKK, and Order ¶¶ D.31-33, J.52, J.53, and attached Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, . . . §§ III.5, III.E.6, III.E.7," and "only as to [McKinsey]." (*Mar-Bow I*, No. 3:16cv613, ECF No. 1-1.) As clarified in the extensive briefing before the Court and in Mar-Bow's arguments to the Bankruptcy Court, Mar-Bow appeals the portions of the Reorganization Plan that indemnify, exculpate, and release McKinsey from liability in certain circumstances. According to Mar-Bow,

> [n]either the release nor the exculpation are appropriate, given that McKinsey . . . has not disclosed all of its connections as required by Rule 2014. Without that complete disclosure, [Mar-Bow] is unable to determine whether the [Confirmation Plan] is in its best interests or is tainted by a lack of disinterestedness or a conflict of interest.

(Mar-Bow Plan Obj. 4, App. 1487.) The Bankruptcy Court overruled Mar-Bow's objection, stating that it was "absolutely satisfied, as I said before, McKinsey is a disinterested party based on everything that I've seen, which was far more than adequate submission that I received

---

[34] For readability, the Court will refer to these three rulings collectively as "the Reorganization Plan Rulings."

yesterday." (July 7, 2016 Hr'g Tr. 122, App. 3094.) The Bankruptcy Court approved the

Reorganization Plan, and Mar-Bow appealed.

The specific sections of the Plan that Mar-Bow appeals are the Bankruptcy Court's

findings that:

> The Plan's indemnification, exculpation, release[,] and injunction provisions have
> been negotiated in good faith, and are consistent with sections 105, 1123(b)(6),
> 1129[,] and 1142 of the Bankruptcy Code and applicable law in this Circuit.

(Reorganization Plan ¶ J, App. 1752.)

> the release, exculpation and injunction provisions set forth in the Plan
> (collectively, the "Plan Releases") are necessary and fair because: (1) the non-
> Debtor Released Parties have contributed substantial assets to the reorganization
> and/or were critical contributors to the Settlements that make Confirmation of the
> Plan possible; (2) the Plan Releases are (i) essential to the Debtors'
> reorganization, . . . (iii) essential consideration for the substantial concessions and
> contributions made by the Released Parties throughout the Chapter 11 Cases, (iv)
> a critical element of the integrated and related Settlements that are the foundation
> of the Plan and (v) integral to the structure of the Plan and formed part of the
> agreement among all parties in interest embodied thereby; (3) all impaired Classes
> entitled to vote on the Plan have voted overwhelmingly to accept the Plan; . . . and
> (5) the Plan Releases do not relieve any Released Party of any liability arising out
> of an act or omission constituting gross negligence or willful misconduct.

(*Id.* ¶ III, App. 1769–70.)

> the third-party releases (including non-consensual third party releases)
> contemplated by the Plan are necessary and fair under the circumstances of the
> Chapter 11 Cases and consistent with applicable law; and (3) the Plan Releases
> were proposed in good faith, are essential to the Plan, are appropriately tailored,
> are intended to promote finality and prevent parties from attempting to
> circumvent the Plan's terms and are consistent with the Bankruptcy Code and
> applicable law and, therefore, valid and binding. The third-party releases were
> disclosed in the Disclosure Statement and the Ballots and therefore consented to
> by all parties who voted in favor of the Plan . . . . In light of all the circumstances,
> the Plan Releases are consistent with the prevailing law in this District and are fair
> to the releasing parties.

(*Id.* ¶ JJJ, App. 1770.) Mar-Bow also appeals the sections of the Reorganization Plan's orders that grant and implement the releases. Mar-Bow appeals each of these orders "only as to [McKinsey]."[35] (Not. Appeal 1, App. 1994.)

In its opening appellate brief, Mar-Bow devoted three pages of its sixty-one page brief to arguing that the Bankruptcy Court erred in confirming the Reorganization Plan and entering the Plan Confirmation Order. In its statement of the issues presented, Mar-Bow framed the question before the Court as:

> Did the bankruptcy court err in confirming the Debtors' reorganization plan insofar as it provided for releases and exculpation as to McKinsey before McKinsey publicly disclosed all connections required by Bankruptcy Rule 2014, *if and to the extent* such provisions bar court consideration of compliance with the Rule and sanctions for non-compliance?

(Mar-Bow Br. 3, ECF No. 24 (emphasis added).)[36] Mar-Bow argues that the Bankruptcy Court should not have approved the release and exculpation provisions for McKinsey "[i]f and to the extent that [those provisions] indeed bar the [C]ourt from ruling that McKinsey failed to comply with Rule 2014, or bar court sanctions for disclosure omissions." (*Id.* at 60.)

Mar-Bow, however, seems to admit that the Bankruptcy Court never ruled on whether the release and exculpation provisions prevent this Court or would in the future prevent the Bankruptcy Court from considering any potential Rule 2014 violation by McKinsey: "[W]hile the bankruptcy court held that McKinsey had earned the release and exculpation provisions, *it did not address their effect on potential McKinsey sanctions*." (Mar-Bow Reply Br. 28

---

[35] The Court will refer collectively to the sections of the Reorganization Plan that Mar-Bow has appealed as "the release and exculpation provisions" unless specifically referring to individual provisions appealed.

[36] In so contending, Mar-Bow argues—as it does throughout all its filings in this Court— that the twenty-five pages of "connections" McKinsey identified in its four different publicly filed Rule 2014 disclosures remain insufficient, even though McKinsey's disclosures satisfied both the U.S. Trustee and the responsive and thorough Bankruptcy Court.

(emphasis added).) Moreover, Mar-Bow asserts that "[t]here is absolutely no evidence that any parties expected that the release and exculpation provisions in the Plan would impede court consideration of McKinsey's Bankruptcy Rule 2014 disclosure violations or possible reductions of McKinsey's fee requests." (Mar-Bow Resp. McKinsey Mot. Dismiss Equitably Moot 18, ECF No. 33.)

McKinsey counters that "Mar-Bow cannot appeal conditionally on how the District Court interprets the release. If Mar-Bow believes the release is ambiguous, it must ask the Bankruptcy Court what it thought it was approving. It cannot ask this Court for an interpretation and then determine whether it wants the interpretation reversed." (McKinsey Br. 54, ECF No. 38.) McKinsey further argues that, because Mar-Bow appeals the Reorganization Plan "if and to the extent" that it would prevent this Court from considering Mar-Bow's Rule 2014 challenges or the Bankruptcy Court from issuing sanctions against Mar-Bow for not complying with Rule 2014, the appeal "is no longer an 'appeal' within the meaning of Part VIII of the Bankruptcy Rules."[37] (McKinsey Reply Br. 3, ECF No. 34.) McKinsey contends that "[t]here is no such thing as an appeal of an order in which appellant asks the appellate court to interpret what the order means before asking the appellate court to reverse it," and that Mar-Bow's appeal of the Reorganization Plan Rulings therefore must be dismissed. (*Id.*)

McKinsey also argues that, even if Mar-Bow's appeal of the Reorganization Plan Rulings is properly before the Court, it should be dismissed as equitably moot. McKinsey asserts that the Court should "deploy the doctrine of equitable mootness to block the retroactive deprivation of releases that Mar-Bow now seeks in the appeal." (Mot. Dismiss Equitably Moot 8, ECF No. 32.)

---

[37] Part VIII of the Bankruptcy Rules govern, *inter alia*, "the procedure in a United States district court and a bankruptcy appellate panel on appeal from a judgment, order, or decree of a bankruptcy court." Fed. R. Bankr. P. 8001(a).

McKinsey argues that the Court should dismiss Mar-Bow's appeal as equitably moot because: (1) Mar-Bow failed to obtain a stay of the Reorganization Plan pending Appeal; (2) the Plan has been substantially consummated; (3) failure to apply the release and exculpation provisions to McKinsey would imperil the success of the Plan; and, (4) the relief Mar-Bow requests would unfairly prejudice third parties.

Mar-Bow argues that equitable mootness should not bar its appeal because the relief Mar-Bow seeks "is very narrow and does not impair plan effectiveness or the rights of third parties that relied upon the confirmation order." (Mar-Bow Resp. Mot. Dismiss Equitably Moot 1.) Mar-Bow asserts that equitable mootness does not merit dismissal of its appeal because "Mar-Bow's appeal challenges only a small part of the Plan, not its very foundation, and even then seeks only a narrow holding regarding the effect of that provision." (*Id.* at 10.) Mar-Bow contends that because it has "argued only that the bankruptcy court erred in approving the application of these provisions to McKinsey *if and to the extent* they barred the court from ruling that McKinsey violated Rule 2014 and sanctioning its non-compliance," the Court should not dismiss its appeal as equitably moot. (*Id.* at 12.)

### B.     The Court Will Dismiss Mar-Bow's Appeal of the Reorganization Plan Rulings as Equitably Moot

"The doctrine of equitable mootness represents a pragmatic recognition by courts that reviewing a judgment may, after time has passed and the judgment has been implemented, prove 'impractical, imprudent, and therefore inequitable.'" *In re U.S. Airways Group, Inc.*, 369 F.3d 806, 809 (4th Cir. 2004) (quoting *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). Because the doctrine is "based on practicality and prudence, its application does not employ rigid rules. Rather, a court must determine whether judicial relief on appeal can, as a pragmatic matter, be granted." *Mac Panel*, 283 F.3d at 625. "Unlike constitutional mootness,

which turns on the threshold question of whether a justiciable case or controversy exists, equitable mootness . . . is concerned with whether a particular remedy can be granted without unjustly upsetting a debtor's plan of reorganization."[38] *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 481 (2d Cir. 2012).

The United States Court of Appeals for the Fourth Circuit has "identified certain factors that aid the determination of whether the requested relief can, as a practical matter, be granted." *In re US Airways*, 369 F.3d at 809. Those factors include:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and[,] (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Mac Panel*, 283 F.3d at 625. No one factor of this four-part balancing test is dispositive, and the "question . . . is whether these factors, taken together, suggest that, irrespective of the merits of the appeal, it would be imprudent to disturb the Plan at this late date." *In re Anderson*, 349 B.R. 448, 454 (E.D. Va. 2006). "Equitable mootness in the bankruptcy setting thus requires the district court to carefully balance the importance of finality in bankruptcy proceedings against

---

[38] The doctrine of equitable mootness is different from the doctrine of constitutional mootness. *See, e.g., Alexander v. Barwell Cty. Hosp.*, 498 B.R. 550, 556 (D.S.C. 2013) ("Mootness in bankruptcy appeals arises in two forms: constitutional mootness and equitable mootness."). Because equitable mootness is based on a pragmatic consideration and not constitutional mootness's "threshold question of whether a justiciable case or controversy exists," equitable mootness presents issues of fairness and prudence, not issues of jurisdiction. *See Charter Commc'ns, Inc.*, 691 F.3d at 481. Thus, unlike a constitutional mootness challenge in which the appellant, as the party invoking a court's power, would bear the burden of proving jurisdiction, the movant bears the burden of proving equitable mootness. *See In re Anderson*, 349 B.R. at 454. *But see Alexander*, 498 B.R. at 557 (examining challenges in a bankruptcy appeal that the appeal was both constitutionally and equitably moot and stating broadly that "the appropriate means for challenging the mootness of a case is a motion" challenging the court's subject matter jurisdiction, on which the burden "rests with the plaintiff, as the party invoking" jurisdiction).

the appellant's right to review and relief."[39] *Charter Commc'ns*, 691 F.3d at 481. The Court

must consider "the totality of [the] circumstances," *Mac Panel*, 283 F.3d at 62, and McKinsey, as

the moving party, bears the burden of proving that Mar-Bow's appeal is equitably moot, *In re*

*Anderson*, 349 B.R. at 454.

The Court finds that each of the four factors weighs in favor of finding Mar-Bow's

appeal of the Reorganization Plan Rulings equitably moot, and that, considering the totality of

the circumstances, it would be imprudent and inequitable to upset the Reorganization Plan at this

late date.

### 1.    Mar-Bow Failed to Obtain a Stay

It is undisputed that, although Mar-Bow moved for a stay of the Reorganization Plan on

July 15, 2016, Mar-Bow did not seek expedited consideration of its Motion to Stay, and the

Bankruptcy Court did not hear Mar-Bow's Motion to Stay until August 25, 2016, almost one

month after the Plan had become effective. The Bankruptcy Court orally denied Mar-Bow's

Motion to Stay at the hearing, and entered an Order and Memorandum Opinion memorializing

its ruling and reasoning on August 29, 2016. Although Mar-Bow has appealed the Bankruptcy

Court's denial of its Motion to Stay, it failed to move in this Court for either a stay or an

expedited appeal.

---

[39] The unique nature of bankruptcy litigation justifies the application of specialized legal doctrines. In part because parties in bankruptcy actions might "tak[e] advantage of bankruptcy procedures to place barriers in the way of . . . competitor[s]," *Mac Panel*, 283 F.3d at 627, doctrines such as equitable mootness have special importance in bankruptcy proceedings. *See, e.g., id.* at 627 n* (noting the countervailing interests in place when a debtor's creditor is also a major competitor: "The longer MAC Panel remains in bankruptcy, the longer MAC Panel must compete against a competitor who not only is in a position to utilize MAC Panel's presence in Chapter 11 to gain competitive advantage but, in its dual status as a creditor, also is in a position to oppose and prolong MAC Panel's efforts to emerge from bankruptcy").

This factor, therefore, weighs in favor of finding that Mar-Bow's appeal of the Reorganization Plan Rulings is equitably moot. *See US Airways*, 369 F.3d at 810.

## 2. The Plan Has Been Substantially Consummated

Mar-Bow, appropriately, does not contest that the Plan has been substantially consummated. Substantial consummation, as defined within the Bankruptcy Code, requires three events:

**(A)** transfer of all or substantially all of the property proposed by the plan to be transferred;

**(B)** assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and[,]

**(C)** commencement of distribution under the plan.

11 U.S.C. § 1101(2); *see also Mac Panel*, 283 F.3d at 625–26.

First, the Plan itself provides that it is "deemed to be substantially consummated" on the day it became effective—here, July 26, 2016. (Reorganization Plan 84, App. 1824.) Mar-Bow does not challenge that provision of the Plan on appeal.

Moreover, a substantial amount of the transactions contemplated by the Reorganization Plan have taken place. The core transaction of the Plan, the Stalking Horse APA, occurred on the effective date of the Plan. Also on the effective date, executory contracts and unexpired leases were assumed, assumed and assigned, or rejected. Numerous settlements of creditors' claims were approved by the Bankruptcy Court on the effective date. Every encumbrance against the NewCo assets was "deemed to be released" as of the effective date. (Reorganization Plan 36, App. 1776.) Thus, not only did the Plan *state* that it would be "deemed to be substantially consummated" on the Plan's effective date, but the terms of the Plan also provide that the majority of the reorganization occurring under the Plan would happen on the effective

date. The Plan was substantially consummated, as defined by 11 U.S.C. § 1101(2), on July 26, 2016, three months before Mar-Bow filed its opening brief in this case, and nearly six months before the briefing in this appeal was completed.

This factor, therefore, also weighs in favor of finding that Mar-Bow's appeal of the Reorganization Plan Rulings is equitably moot. *See, e.g., Mac Panel*, 283 F.3d at 626–27 (finding a reorganization plan was substantially consummated when, *inter alia*, funds had been transferred and used to satisfy creditors, disputed claims had been settled, and creditors had been paid).

### 3. The Relief Mar-Bow Requests Would Significantly Affect the Success of the Plan

The Bankruptcy Court made several factual findings regarding the interrelated nature of the Plan provisions that Mar-Bow has not challenged on appeal, and those findings remain the law of the case. During the Plan Confirmation Hearing, the Bankruptcy Court stated that "the releases . . . . are part of a plan[, and were] . . . baked into the plan." (July 7, 2016 Hr'g Tr. 176, App. 3148). Moreover, the Plan's core transaction was conditioned in part on the release and exculpation provisions applying to all involved professionals:

> NewCo will not enter into the Stalking Horse APA and consummate the transactions contemplated thereby, thus adversely affecting the Debtors' Estates and undermining the ability of the Debtors to consummate the Plan, if: . . . the injunction, exculpation and release provisions in the Plan were not approved by the Bankruptcy Court.

(Reorganization Plan ¶ WW, App. 1763.)

The Bankruptcy Court also found that the Reorganization Plan involved a "web of interrelated settlements that had been painstakingly woven together," (Stay Mem. Op. 15, App. 2463), and that Mar-Bow's attempt to prevent the Release and Exculpation Provisions from applying to McKinsey "threatens to disrupt the hard-fought global peace achieved among the

39

Debtors and all of their major stakeholders that is memorialized in the confirmed Plan," (*id.* at 24, App. 2474). Although Mar-Bow has appealed these findings of the Bankruptcy Court, Mar-Bow has pointed to nothing indicating that the findings are clearly erroneous and, considering all the evidence in the record, the Court cannot so find. *See Bessemer City*, 470 U.S. at 573 (stating that a finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed").

Thus, based on the Bankruptcy Court's factual findings and the provisions of the Reorganization Plan itself, if this Court were to grant Mar-Bow the relief it requests—a ruling that the release and exculpation provisions do not apply to McKinsey—it would risk not only disrupting the core transaction of the Plan, the Stalking Horse APA, but unravelling the "web of interrelated settlements that had been painstakingly woven together" and the "hard-fought global peace" that the Plan achieved. (Stay Mem. Op. at 15, 24, App. 2463, 2474.) This factor, therefore, also weighs in favor of finding that Mar-Bow's appeal is equitably moot.[40] *See, e.g.,*

---

[40] Mar-Bow argues that it

> has not challenged the Debtors' entire Plan. It has not even sought to excise the release and exculpation provisions. Mar-Bow has argued only that the bankruptcy court erred in approving the application of these provisions to McKinsey *if and to the extent* they barred the court from ruling that McKinsey violated Rule 2014 and sanctioning its non-compliance.

(Mar-Bow Resp. Mot Dismiss Equitably Moot 12, ECF No. 33.) That argument, however, takes Mar-Bow out of the frying pan and puts it into the fire. Were the Court to find that Mar-Bow appealed the release and exculpation provisions only "if and to the extent" they bar a ruling that McKinsey violated Rule 2014, the Court likely would have to dismiss Mar-Bow's appeal of those provisions for lack of jurisdiction.

28 U.S.C. § 158(a) grants this Court jurisdiction to hear appeals, as relevant here, "from final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1). It grants no jurisdiction to interpret the rulings of bankruptcy courts on issues not before the Court. The Court can find nowhere in the record that the Bankruptcy Court ruled that the release and exculpation provisions would bar a ruling that McKinsey violated Rule 2014 or prevent a court from sanctioning such noncompliance, and Mar-Bow identifies none. To the contrary, even

*Mac Panel*, 283 F.3d at 626–27 (finding that, although "an order [granting the appellant the relief it requested] could be drafted," doing so would undo one of the conditions on which the reorganization plan was premised).

### 4. The Relief Mar-Bow Requests Would Significantly Affect the Interests of Third Parties

The Bankruptcy Court held that the release and exculpation provisions in the Plan were important, in part because McKinsey and the other professionals involved had expended "extensive efforts to reach the interconnected settlements in the face of multiple, significant[,] and competing interests," and they "should not be subject to the potential of frivolous future litigation as a result of their efforts." (Stay Mem. Op. 17, App. 2465.) The Bankruptcy Court also found that, "[a]ny professional, including McKinsey . . . , that is not released and exculpated, will have to implead other professionals and parties in the event it is sued. It will have to take discovery from other professionals and other parties, as well." (*Id.* at 23, App. 2471.) Based on those and other findings, the Bankruptcy Court found that Mar-Bow's appeal of the release and exculpation provisions "threatens to disrupt the hard-fought global peace achieved among the Debtors and all of their major stakeholders that is memorialized in the confirmed Plan." (*Id.* at 24, App. 2472.)

Mar-Bow attempts to refute these findings by asserting that the evidence the Bankruptcy Court relied on in coming to these conclusions—the declaration of Andy Eidson, Executive Vice

---

Mar-Bow asserts that, "while the bankruptcy court held that McKinsey had earned the release and exculpation provisions, *it did not address their effect on potential McKinsey sanctions*." (Mar-Bow Reply Br. 28, ECF No. 47 (emphasis added).) Moreover, Mar-Bow itself appears to acknowledge that the Bankruptcy Court made no such ruling by phrasing the issue it wants this Court to rule on as a hypothetical. This Court is not in the business of issuing advisory opinions.

In an abundance of caution, so as not to deny Mar-Bow the consideration of its appeal, the Court will therefore interpret Mar-Bow's appeal of the release and exculpation provisions in accordance with the issues Mar-Bow identified in its Notice of Appeal and will rule on them accordingly.

President and Chief Financial Officer of ANR—"were generic and made no reference to McKinsey or other professionals." (Mar-Bow Resp. Mot. Dismiss Equitably Moot 5.) The record, however, belies Mar-Bow's arguments and supports the Bankruptcy Court's factual findings.

Importantly, McKinsey's Engagement Letter with the Debtors provided that the Debtors would indemnify McKinsey for all "losses, claims, penalties, damages[,] or liabilities" arising out of McKinsey's engagement, except for "any loss, claim, damage, penalty, liability, cost, fee[,] or expense which is finally judicially determined by a court of competent jurisdiction on the merits to have resulted from the willful misconduct or gross negligence of [McKinsey]." (Engagement Letter 5–6, App. 23–24.) Thus, if the release and exculpation provisions were excised from the Reorganization Plan, even only as to McKinsey, McKinsey would be entitled to seek indemnification from the Debtors. Any amount of indemnification would come from the Estate, and its cost would be borne by the remaining creditors.

Moreover, Mar-Bow cannot demonstrate that the Bankruptcy Court's factual findings were clearly erroneous simply by asserting that the declarations on which they were based were not specific enough. No evidence in the record rebuts the declaration of Eidson, who swore that

> the release, exculpation[,] and injunction provisions set forth in the Plan . . . : (a) confer substantial benefits upon the Estates; . . . (c) are in the best interests of the Debtors, their Estates[,] and parties in interest; (d) are an integral element of the settlements and transactions incorporated into the Plan;  and[,] (f) are important to the overall objectives of the Plan . . . .

(Eidson Decl. ¶ 36, ECF No. 33-1.) Not only is Eidson's testimony unrebutted, but it is consistent with general bankruptcy practice. *See In re Chemtura Corp.*, 439 B.R. 561, 610 (S.D.N.Y. 2010) ("[E]xculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties; or simply wish to second guess the decisionmakers in the

chapter 11 case."). When "professionals have created substantial value for the estates through their efforts . . . , they should not be subjected to future litigation involving . . . frivolous claims." *In re Health Diagnostics Lab., Inc.*, 551 B.R. 218, 234 (E.D. Va. 2016). The Bankruptcy Court found that the professionals—including McKinsey—involved in the chapter 11 reorganization had made significant contributions, and "[i]n fact, this reorganization would not occur but for those [contributions]." (July 7, 2016 Hr'g Tr. 176, App. 3148.) Mar-Bow has not established that the Bankruptcy Court's finding that the release and exculpation provisions conferred a benefit on the Estate, which would therefore be harmed without them, was clearly erroneous.

Finally, if the Court were to grant Mar-Bow the relief it requests and find that McKinsey is not entitled to the protection of the release and exculpation provisions, it would "shake the reliance that businesses, investors, and the public place on the finality of bankruptcy confirmation orders. . . . [and] would render substantially more difficult the successful completion of large reorganization efforts such as the present one." *U.S. Airways*, 369 F.3d at 810–11. Mar-Bow has provided the Court with no compelling reason to do so, and the Court sees none. This factor, therefore, also weighs in favor of finding that Mar-Bow's appeal is equitably moot.

The Court finds that McKinsey has sufficiently established that each of the four factors weighs in favor of finding Mar-Bow's appeal equitably moot. Mar-Bow failed to obtain a stay of the Reorganization Plan pending appeal, the Plan has been substantially consummated, and granting Mar-Bow the relief it requests would significantly affect the success of the plan and the interests of third parties. Considering the totality of the circumstances in this case, it would be imprudent and inequitable to disturb the Reorganization Plan at this late date. The Court will dismiss Mar-Bow's Reorganization Plan Appeal as equitably moot.

## V. Analysis: Mar-Bow's Appeal of the Rule 2014 Rulings

Mar-Bow appeals three of the Bankruptcy Court's rulings regarding McKinsey's Rule 2014 disclosures: (1) the Order Compelling Compliance; (2) the Clarification Order; and, (3) the Confidentiality Order.[41]

### A.  The Scope of Mar-Bow's Rule 2014 Rulings Appeal

Mar-Bow asserts that the Bankruptcy Court erred in failing to order McKinsey to file publicly additional information about the "connections" it had with the Interested Parties and in allowing McKinsey to submit information regarding its email response rates to the Court *in camera*. For relief, Mar-Bow asks the Court to

> [d]irect the bankruptcy court to (i) order that McKinsey's *in camera* submissions be filed in the public record; (ii) require McKinsey to make [additional] disclosures . . . if the *in camera* submissions are inadequate to meet Rule 2014 requirements; (iii) order McKinsey to undertake a thorough search for all connections with all parties on the IP List . . . and disclose the results in a filed supplemental Rule 2014 disclosure; (iv) re-determine McKinsey's disinterestedness after receiving all disclosures required by Rule 2014.

(Mar-Bow Br. 60–61, ECF No. 24.)

McKinsey counters that its Rule 2014 disclosures were adequate in the circumstances of this case, and that the information the Bankruptcy Court ordered to be filed *in camera* is not a "connection" that Rule 2014 requires to be filed, and is therefore immaterial in determining whether McKinsey complied with Rule 2014. McKinsey also has moved to dismiss Mar-Bow's appeal of the Rule 2014 Rulings for lack of standing. McKinsey argues that "not a penny would further inure to Mar-Bow's benefit—even if McKinsey . . . were forced to disgorge all its fees[, and a] party must have a financial interest to possess the requisite standing to maintain an appeal from a bankruptcy court order." (McKinsey Standing Mot. Dismiss 1, ECF No. 37.) McKinsey

---

[41] For readability, the Court will refer to these three rulings collectively as "the Rule 2014 Rulings."

asserts that Mar-Bow has no standing to appeal the Rule 2014 Rulings because Mar-Bow lacks

the requisite financial interest in those rulings, and its appeal must therefore be dismissed.

Mar-Bow acknowledges that courts generally require a party to have a pecuniary interest

in the outcome in order to have standing to appeal a bankruptcy court's ruling, but asserts that

this "rule is a prudential standing limitation, not an Article III one." (Mar-Bow Resp. Standing

Mot. Dismiss 7, ECF No. 43.) According to Mar-Bow, courts have recognized exceptions to the

pecuniary interest standing requirement and "afford[ed] appellate standing to preserve the

integrity of the bankruptcy system and vindicate the public interest." (*Id.* at 8.) Thus, Mar-Bow

asserts, although it "might not realize a pecuniary benefit from an order compelling McKinsey to

comply fully with Rule 2014," (*id.* at 13), "Mar-Bow's appeal presents issues central to the

integrity of the bankruptcy system," and the Court therefore should not dismiss it as equitably

moot, (*id.* at 19).

**B.    The Court Will Dismiss Mar-Bow's Appeal of the Rule 2014 Rulings Because Mar-Bow Lacks a Pecuniary Interest in the Outcome of the Appeal**

"The test for standing to appeal a bankruptcy court's order to the district court is well-

established: the appellant must be a *person aggrieved* by the bankruptcy order." *In re Urban*

*Broad. Corp.*, 401 F.3d 236, 243 (4th Cir. 2005) (citing *In re Clark*, 927 F.2d 793, 795 (4th Cir.

1991)). The "person aggrieved" test was originally codified in the original Bankruptcy Code, but

abandoned when Congress repealed it in 1978. *In re Clark*, 927 F.2d at 795. Courts, however,

continue to use the test. *Id.* "[I]t is well-established that a person aggrieved is a party directly

and adversely affected pecuniarily."[42] *In re Urban Broad.*, 401 F.3d at 244 (quotations and

---

[42] "United States trustees, who never have pecuniary interests in cases, could not of
course meet this standard, but there are other standards applicable to parties such as . . . trustees."
*In re Clark*, 927 F.2d at 795; *see also In re Revco D.S., Inc.*, 898 F.2d 498, 499–500 (6th Cir.
1990) (holding that the U.S. Trustee, despite having no pecuniary interest in the outcome of

citations omitted). In other words, in order to have standing to appeal a bankruptcy court order, the appellant "must show that the order . . . 'diminishes [its] property, increases [its] burdens[,] or impairs [its] rights.'" *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 558 (D. Del. 2005) (quoting *In re Combustion Eng'g*, 391 F.3d 190, 214 (3d Cir. 2004)). The application of the "person aggrieved" standard to establish standing in a bankruptcy appeal "reflect[s] the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988). Mar-Bow cannot meet this standard in the context of its Rule 2014 Appeal, and therefore lacks standing to bring them.

As an initial matter, the relief that Mar-Bow purports to seek in this Appeal might itself divest Mar-Bow of standing because Mar-Bow seeks nothing that would necessarily result in a pecuniary gain. Mar-Bow asks the Court to direct the Bankruptcy Court to enter orders requiring McKinsey to: (1) file its *"in camera* submissions . . . in the public record"; (2) make unspecified additional disclosures "sufficient in detail and description to permit the court and any party in interest to ascertain whether McKinsey has a disqualifying connection";[43] and, (3) perform a "thorough search for all connections . . . to correct defects in its search[,] and disclose the results in a filed supplemental Rule 2014 disclosure." (Mar-Bow Br. 60–61.) Mar-Bow also asks this

---

bankruptcy court rulings, has standing to appeal because of the Trustee's unique role as "a watchdog rather than an advocate" who is "responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law") (internal quotation and citation omitted). Normally, of course, an individual lacks standing when seeking "not remediation of its own injury[,] . . . but vindication of the rule of law—the 'undifferentiated public interest.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998).

[43] Mar-Bow appears to seek these unspecified additional disclosures only "if the *in camera* submissions are inadequate to meet Rule 2014 requirements." (Mar-Bow Br. 60–61.)

Court to order the Bankruptcy Court to then "re-determine McKinsey's disinterestedness." (*Id.* at 61.) Mar-Bow does not, in this appeal, argue that because McKinsey's Rule 2014 disclosures were allegedly insufficient, all of McKinsey's fees *must* be disgorged and returned to the estate, nor can it.[44] *See, e.g., In re Crivello*, 134 F.3d 831, 839 (7th Cir. 1998) ("Bankruptcy courts have wide latitude in connection with fact-intensive matters, like the terms and conditions of the employment of professionals . . . [because] a bankruptcy judge is in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails.") (internal quotation marks and citation omitted). None of Mar-Bow's requested relief, even if the Court granted it *all*, would result in any pecuniary gain to *anyone*—let alone Mar-Bow. Accordingly, Mar-Bow likely has pled itself out of any pecuniary interest it might have otherwise had by seeking relief that is entirely unrelated to monetary recovery.

However, even had Mar-Bow sought relief that was pecuniary in nature, Mar-Bow lost any pecuniary interest in the outcome of the Rule 2014 Appeal on July 12, 2016, when the Reorganization Plan was confirmed. When the Plan was finalized, the expected recovery for Mar-Bow's class of claim became fixed.[45] All additional cash will be distributed to holders of "Allowed Secured First Lien Lender Claims," which does not include Mar-Bow. Therefore, even if the Court were to grant Mar-Bow's requested relief by remanding the case to the Bankruptcy Court with all of Mar-Bow's proposed mandates, and even if the Bankruptcy Court sanctioned McKinsey by disgorging *all* of McKinsey's fees, those fees would return as cash to

---

[44] As noted earlier, Mar-Bow has noticed an appeal of the Bankruptcy Court's final fee determination. *See supra* note 32. Because Mar-Bow also appealed that ruling in another case, the Court addresses that issue separately—in the *Mar-Bow II* Memorandum Opinion.

[45] Mar-Bow's unsecured claim represents $1.25 million of ANR 7.5% second lien notes due August 1, 2020. Mar-Bow, a Class 6B claimant under the Plan, shares in the "Category 2 General Unsecured Claims Asset Pool," the amount of which was fixed at the time the Plan became final. Mar-Bow's recovery from the Estate will not change.

the Estate and be distributed to holders of "Allowed Secured First Lien Lender Claims." Mar-Bow would receive no pecuniary benefit at all.

Mar-Bow lacks any pecuniary interest in the outcome of the Rule 2014 Appeal, it is not a "person aggrieved" by the Bankruptcy Court's order, and it therefore lacks standing to appeal those rulings. The Court will dismiss Mar-Bow's appeal of the Rule 2014 Rulings.

## VI. Conclusion

For the foregoing reasons, the Court will grant McKinsey's Motion to Dismiss the Appeal of the Reorganization Plan Rulings, (ECF No. 32), and dismiss Mar-Bow's appeal of the Confirmation Order as equitably moot. The Court will grant McKinsey's Motion to Dismiss the Appeal of the Rule 2014 Rulings, (ECF No. 37), and dismiss Mar-Bow's appeal of the Rule 2014 Rulings for lack of standing. The Court will dismiss Mar-Bow's appeal.[46] An appropriate order will issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 9/30/2017
Richmond, Virginia

---

[46] Because the Court will dismiss Mar-Bow's appeals for the reasons stated above, it need not reach the merits of Mar-Bow's numerous Rule 2014 appeals. That said, this Court sees a record replete with patient, efficient, and thorough determinations on a series of complicated matters. Certainly, the Bankruptcy Court addressed—repeatedly and comprehensively—each objection Mar-Bow presented to it. Moreover, this Court expresses no reservation about the competence or integrity with which the Bankruptcy Court reviewed McKinsey's *in camera* disclosures or declined to order that they be publicly filed.